Mark G. PETERS, and Allen Piechowski, individually and on behalf of all others similarly situated, Plaintiffs,

v.

CARS TO GO, INC., a Michigan corporation, and Mercury Finance Company of Michigan, a Delaware corporation, Defendants.

No. 1:97–CV–920.

United States District Court,
W.D. Michigan,
Southern Division.

Nov. 16, 1998.

Phillip C. Rogers, Grand Rapids, MI, for Plaintiffs.

Joseph P. VanderVeen, Linsey, Strain & Worsfold, Grand Rapids, MI, for Cars To Go, Inc.

J. Terrance Dillon, Dykema Gossett PLLC, Grand Rapids, MI, for Mercury Finance Company of Michigan.

## *OPINION*

QUIST, District Judge.

In this action, Plaintiffs, Mark G. Peters ("Peters") and Allen Piechowski ("Piechowski"), allege that Defendants, Cars To Go, Inc. ("Cars") and Mercury Finance Company of Michigan ("Mercury"), violated the Truth In Lending Act ("TILA"), 15 U.S.C. §§ 1601 to 1667f, in connection with Plaintiffs' purchases of automobiles from Cars. Plaintiffs allege in their second amended class action complaint that Defendants violated the TILA by failing to disclose the price of a vehicle service contract ("VSC") as a "finance charge" in the TILA disclosure statement and failing to disclose in the "Itemization of Amount Financed" that they were retaining a portion of the VSC price.[1] Plaintiffs allege

---

1. The second part of Plaintiffs' TILA claim is based upon several recent cases, including the Seventh Circuit's decision in *Gibson v. Bob Watson Chevrolet–Geo, Inc.*, 112 F.3d 283 (7th Cir. 1997), which hold that a creditor violates the TILA by retaining a portion of a charge shown in the "Itemization of Amount Financed" as being paid to a third party without disclosing that it is retaining a portion of the fee.

that Mercury is liable for those violations as an assignee of the finance contracts. In addition, Plaintiffs seek to invoke this Court's supplemental jurisdiction under 28 U.S.C. § 1367 over their state law claims for violation of the Michigan Consumer Protection Act ("MCPA"), M.C.L. §§ 445.901 to .922, breach of contract, and fraud. Now before the Court is Plaintiffs' motion for class certification.

### Facts

In April 1997, Peters decided to purchase a used car. Because of his poor credit history, Peters sought financing in the "subprime" loan market. Peters went to Cars, found a 1991 Chevrolet Cavalier with approximately 77,000 miles on the odometer, and negotiated with Mike DiMatteo ("DiMatteo"), the general manager of Cars, for the purchase price and financing terms. After contacting various financing companies, DiMatteo offered to sell the car to Peters for $6,320.60, with financing through Mercury for a term of eighteen months. Peters rejected the offer because the short duration of the loan resulted in higher payments than Peters could afford.

DiMatteo told Peters that he would contact Mercury to see what could be done about lowering the amount of the payments. DiMatteo spoke with Mercury's manager, Richard Ripley ("Ripley"). Ripley testified that he agreed to lower the monthly payments by extending the term of the loan to thirty-six months, on the condition that Peters purchase a three-year/36,000 mile VSC at a cost of $1,100. (Ripley Dep. at 86–87, 125–26, attached to Mercury's Br. Opp'n.) Peters agreed to the terms of the deal, but alleges that DiMatteo required him to purchase the VSC as part of the deal. (See 2d Am. Class Compl. ¶¶ 9, 10). DiMatteo denies that Ripley conditioned the longer payment term on Peters' purchase of a VSC. DiMatteo also denies that he required Peters to purchase a VSC.

Peters purchased the 1991 Cavalier under a retail installment contract. In the TILA disclosures, the retail installment contract listed the charge for the VSC as an "amount financed." The "Itemization of Amount Financed" disclosure showed that $1,100 was being paid to a third party for the VSC. In fact, Cars did not pay the entire amount to the third party but instead retained $288 for itself. Following the sale, Cars assigned the retail installment contract to Mercury, which apparently also retained a portion of the VSC charge.

Piechowski decided to purchase a used automobile in May 1997. Like Peters, Piechowski did not have a clean credit record, and sought "subprime" financing. Piechowski decided to purchase a 1994 Ford Probe with approximately 71,644 miles on the odometer from Cars. He negotiated with DiMatteo for a purchase price of $8,511.89. The purchase was financed by Mercury.

Piechowski alleges that he did not discuss purchasing a VSC with Cars until he received the retail installment contract and noticed a $900 charge for "other," which DiMatteo explained was for a VSC. (See 2d Am. Class Compl. ¶ 34.) Piechowski further alleges that he told DiMatteo that he did not want to purchase the VSC but was forced to do so because DiMatteo explained that Mercury's policy was "to require borrowers to purchase a [VSC] when the loan was for a term of forty-two months." (Id.) Ripley could not recall whether a VSC was a condition of the loan to Piechowski. (Ripley Dep. at 166, 69, attached to Mercury's Br. Opp'n.) DiMatteo testified that he did not tell Piechowski that either Mercury or Cars required him to purchase a VSC. As was the case with Peters' retail installment contract, Cars included the VSC charge as part of the "amount financed." In addition, Cars indicated that the entire amount for the VSC would be paid to a third party, although Cars and/or Mercury retained a portion of the charge. After the sale Cars assigned the contract to Mercury.

### Discussion

**I. Plaintiffs' Claims**

Plaintiffs seek class certification only with regard to their TILA and MCPA claims. As noted above, Plaintiffs' TILA claim consists of two parts. First, Plaintiffs contend that Cars was required to disclose the VSC

charge as a "finance charge" because "it was imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a); *see also* Regulation Z, 12 C.F.R. § 226.4(a) (1998) (defining finance charge). In the second part of their TILA claim, Plaintiffs contend that Cars violated the TILA by listing the full amount of the VSC price under "Amounts Paid to Others on Your Behalf" without disclosing that Cars would be retaining a portion of the VSC charge. Plaintiffs' MCPA claim is based, in part, upon the same acts which form the basis of the TILA claim.

Plaintiffs' TILA claim against Mercury was based upon its liability as an assignee of the retail installment contracts pursuant to the Federal Trade Commission's Holder Rule set forth in 16 C.F.R. § 433.2(a). Plaintiffs now concede that 15 U.S.C. § 1641(a), rather than the Holder Rule, governs an assignee's liability under the TILA. Plaintiffs also admit that § 1641(a) imposes liability only where the TILA violation can be determined from the face of the disclosure statement or other assigned document. (*See* Pls.' Reply Mem. at 9) (citing *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689 (7th Cir. 1998).) Moreover, Plaintiffs concede that the alleged TILA violations were not apparent from the face of the disclosure documents and that Mercury therefore cannot be held liable under the TILA. (*See id.*) Thus, based upon Plaintiffs' own concession that their assignee liability claim against Mercury under the TILA lacks merit, the Court finds that the TILA claim against Mercury should be dismissed with prejudice.

◼ Plaintiffs contend that Mercury is still liable for violations of the MCPA. Having found that the TILA claim against Mercury should be dismissed, the Court must determine whether it should exercise supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' MCPA claim against Mercury in light of the fact that no federal claims against Mercury will remain. A district court is authorized to decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction...." 28 U.S.C. § 1367(c)(3). The Sixth Circuit has held that a district

court should generally decline to exercise jurisdiction over state law claims where federal claims have been dismissed before trial. *See Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir.1997); *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir.1996). On the other hand, § 1367(a) provides that district courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A court may exercise supplemental jurisdiction over state law claims on the basis of federal claims only if the state and federal claims share a "common nucleus of operative facts." *Futura Dev. of Puerto Rico, Inc. v. Estado Libre Asociado de Puerto Rico*, 144 F.3d 7, 13 (1st Cir.1998) (holding that the plaintiff's alter ego claim against Puerto Rico for enforcement of a prior judgment did not share "sufficient relatedness" with civil rights claims against individuals arising after entry of prior judgment); *Krell v. Prudential Ins. Co. of America (In re Prudential Ins. Co. of America Sales Practices Litig.)*, 148 F.3d 283, 302–03 (3d Cir.1998) (stating that "[a] district court may not assert supplemental jurisdiction over state claims that are totally unrelated to the federal claims that form the basis of the court's jurisdiction").

◼ Plaintiffs' MCPA claim against Mercury may be sufficiently related to their TILA claim against Cars to allow the Court to exercise supplemental jurisdiction over the MCPA claim. As alleged, the MCPA claim against Mercury is entirely dependent upon Cars' alleged violation of the TILA. If Plaintiffs' TILA claim against Cars fails, so too will its MCPA claim against Mercury. In addition, the proof required for Plaintiffs' TILA claim is essentially the same as required for Plaintiffs' MCPA claim against Mercury. Nonetheless, even if supplemental jurisdiction exists, a court may decline to exercise jurisdiction if a "claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1); *see also Doe v. Sundquist*, 106 F.3d 702, 708 (6th Cir.1997) (declining to exercise supplemental jurisdiction over the

plaintiff's state law claim that Tennessee law regarding disclosure of adoption records violated Tennessee constitution). In deciding whether to exercise supplemental jurisdiction, the "obscurity and the paucity of pertinent state judicial precedent [ ] argue[s] in favor of deferring in favor of the state courts." *Scott v. Long Island Sav. Bank, FSB,* 937 F.2d 738, 742 (2d Cir.1991). Plaintiffs' MCPA claim presents unique and novel questions under state law. For example, whether the alleged TILA violations also constitute violations of the MCPA based upon assignee liability, and whether Mercury's compliance with the TILA as an assignee and the Federal Reserve Board's regulation of the transactions at issue are defenses to liability under the MCPA, are issues pertinent to Plaintiffs' claims which have not been addressed by Michigan courts. While Michigan courts may have addressed some of these issues in a very general sense, the Court finds that due to the lack of specific authority, it should forego deciding issues that are best left to the state courts. Therefore, Plaintiffs' MCPA and other state law claims against Mercury will be dismissed without prejudice.

## II. Class Certification

### A. Standard for Certification

Federal Rule of Civil Procedure 23(a) list the prerequisites which must be met for certification of a class:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all parties is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). The requirements of Rule 23(a) are referred to as "numerosity, commonality, typicality, and adequacy of rep-

resentation." *Smith v. MCI Telecommunications Corp.,* 124 F.R.D. 665, 674 (D.Kan. 1989) (mem.op.). A court may certify a class only if all four requirements of Rule 23(a) are met. *See In re American Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir.1996). The party seeking class certification bears the burden of proof. *See id.* In addition to demonstrating that the proposed class meets all of the Rule 23(a) criteria, the party seeking class certification must also show that the case fits into one of the categories described in Rule 23(b). *See id.* "[A] district court may not certify any class without 'rigorous analysis' of the requirements of Rule 23." *Sprague v. General Motors Corp.,* 133 F.3d 388, 397 (6th Cir.1998) (en banc) (citing *General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982)). "Although a hearing prior to the class determination is not always required, 'it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'" *American Med. Sys.,* 75 F.3d at 1079 (quoting *General Tel. Co.,* 457 U.S. at 160, 102 S.Ct. at 2372).

Plaintiffs seek certification of the following classes [2]:

> **Class A:** (i) All persons who executed a retail installment contract with Cars To Go, Inc. for the purchase of a used motor vehicle; (ii) in a transaction that included the purchase of a vehicle service contract; (iii) where the retail installment contract was sold to a finance company; and (iv) where the price of the vehicle contract was disclosed in the retail installment contract as an "amount financed" rather than as a "finance charge."

> **Class C:** (i) All persons who executed a retail installment contract with Cars To Go, Inc. for the purchase of a used motor vehicle; (ii) in a transaction that included the purchase of a vehicle service contract; (iii) where the retail installment contract listed

---

**2.** Plaintiffs requested certification of classes A through D in their motion. Because the Court is dismissing the state law claims against Mercury, Classes B and D, which apply only to Mercury,

will not be considered. However, to avoid confusion, the Court will continue to refer to the remaining classes as A and C as designated by Plaintiffs.

the full price of the vehicle service contract under "Itemization of Amount Financed" in the category "Other Charges Including Amounts Paid to Others on Your Behalf"; (iv) but which contract failed to disclose that a portion of the price of the vehicle service contract may be retained by Cars To Go, Inc.; and (v) where a portion of the price of the vehicle service contract was in fact retained by Cars To Go, Inc.

(*See* Pls.' Mot. at 1–2.) The applicable class periods are one year prior to the date of filing of the original complaint for the TILA claim and six years prior to the date of filing of the original complaint for the MCPA claim. (*Id.* at 2–3.)

### B. Rule 23(a) Requirements

#### 1. Numerosity

■ The numerosity requirement is satisfied where the potential class members are "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Although "[t]here is no strict numerical test for determining impracticability of joinder ... the impracticability requirement is usually satisfied by the numbers alone" when the class is very large. *American Med. Sys.*, 75 F.3d at 1079. While there is no set rule for determining whether the numerosity requirement is satisfied, a class numbering more than 40 members usually satisfies the impracticability requirement, *see, e.g., Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.1986), and classes containing 100 or more members routinely satisfy the numerosity requirement, *see Mathis v. Bess*, 138 F.R.D. 390, 393 (S.D.N.Y.1991) (class of 120 members); *Esler v. Northrop Corp.*, 86 F.R.D. 20, 34 (W.D.Mo.1979) (186 class members).

■ In support of their burden of proving numerosity, Plaintiffs have offered evidence that Cars sold approximately 200 VSCs during 1997. (*See* DiMatteo Dep. at 16, Pls.' Br.Ex. B.) To refute Plaintiffs' evidence, Cars has presented evidence which shows that during 1997 Cars sold approximately 300 used vehicles and that of that number, only about ten vehicles were financed through Mercury. (*See* DiMatteo Dep. at 15–16, Cars' Br. Opp'n Ex. B.) In addition, Cars' evidence shows that VSCs were not purchased by all of the approximately ten customers who financed vehicles through Mercury during 1997. (*See* DiMatteo Aff. ¶ 4, Cars' Br. Opp'n Ex. C.)

The evidence offered by Plaintiffs is sufficient to satisfy the numerosity requirement with respect to the two putative classes involving Cars. Although Plaintiffs have not shown how many of the 200 VSC contracts sold in 1997 were actually financed, "precise quantification of the class members is not necessary because the court may make 'common sense assumptions' to support a finding of numerosity." *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 55 (S.D.N.Y.1993) (quoting *In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 137 (D.N.J. 1984), *rev'd other grounds*, 843 F.2d 1537 (3d Cir.1988)); *see also Vickery v. Jones*, 856 F.Supp. 1313, 1328 (S.D.Ill.1994) (same) (mem.op.). Plaintiffs allege that Cars held itself out to consumers as " 'the Credit Kings' " and catered to persons such as Plaintiffs who required " 'subprime' financing" because of poor credit histories. (2d Am. Class Compl. ¶ 7, 31.) Based upon these allegations, it is reasonable to assume that a large percentage of 200 VSCs were financed. DiMatteo's statement in his affidavit that "of the approximately 100 vehicles sold by Cars To Go, Inc. in 1997 without vehicle service contracts, the majority were financed through third parties," (DiMatteo Aff. ¶ 3, Cars' Br. Opp'n Ex. C), provides further support for this assumption.

Cars' evidence that only approximately ten vehicles were financed through Mercury and that not all of the customers who financed through Mercury purchased VSCs does not affect the Court's conclusion on numerosity. Plaintiffs' proposed classes cover all retail installment contracts which included VSCs, rather than only those assigned to Mercury. Therefore, even if only five of the ten customers who obtained financing through Mercury purchased VSCs, it is still entirely possible that the total number of VSC purchasers exceeds 100.

## 2. Commonality

 Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The commonality requirement "simply requires a common question of law or fact." *Bittinger v. Tecumseh Prods. Co.,* 123 F.3d 877, 884 (6th Cir.1997). "The commonality test 'is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class.'" *American Med.Sys.,* 75 F.3d at 1080 (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 3.10, at 3–50 (3d ed.1992)). However, the commonality requirement is not met merely because a plaintiff can identify some issue which his claim has in common with those of the proposed class. As the Sixth Circuit has observed, "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What we are looking for is a common issue the resolution of which will advance the litigation." *Sprague,* 133 F.3d at 397.

 Plaintiffs assert that the commonality requirement is met because the issue of whether Cars' acts or practices in financing used car purchases which also included a VSC violated the TILA and MCPA is common to all class members. Plaintiffs argue that the common factual issues are substantiated by the class definitions, which include persons who "financed the purchase of a used motor vehicle which included a[VSC] (i) that was not disclosed as a finance charge and/or (ii) that did not state that a portion of the [VSC] was being retained." (Pls.' Reply Mem. at 3.) Cars argues that the issues raised by Plaintiffs' claims are not common to all class members because the terms of each financing transaction depend upon a number of variables unique to each purchaser, including credit and job history, the term of the loan and the amount of the payment, the type and condition of the collateral, and whether or not a VSC is purchased. Cars contends that the factual determination of

whether a particular customer was required to purchase a VSC will require a separate, fact-specific review of those factors for each customer.

On a more general level, Plaintiffs are correct that whether Cars' practices violated the TILA and the MCPA are questions common to the class. But to establish liability, at least with regard to the finance charge claim which Plaintiffs seek to advance on behalf of the members of Class A, Plaintiffs must prove that Cars *required* the purchase of a VSC as part of the credit transaction because a charge is a "finance charge" only if "it was imposed directly or indirectly by the creditor." 15 U.S.C. § 1605(a); *see also Berryhill v. Rich Plan of Pensacola,* 578 F.2d 1092, 1099 (5th Cir.1978) (holding that the defendant's "Food and Freezer Service Agreement" was charge imposed as incident to the extension of credit on "Food Plan Contract"). The nature of the VSC presents a major obstacle to the commonality requirement because unlike other types of charges, such as a "non-filing fee," *see Johnson v. Aronson Furniture Co.,* No. 96 C 117, 1998 WL 641342 (N.D.Ill. Sept. 11, 1998) (mem. op.), which borrowers incur only because they are imposed by creditors, some purchasers may actually choose to purchase a VSC in order to minimize used car repair costs. For this reason, it does not automatically follow that a person who purchased a vehicle and a VSC from Cars on credit was required to purchase the VSC.[3] In fact, the evidence submitted by Cars shows that in 1997, it sold 100 vehicles without service contracts, the majority of which were financed by third parties such as Mercury.

In *Hickey v. Great Western Mortgage Corp.,* No. 94 C 3638, 1995 WL 121534, (N.D.Ill. Mar. 17, 1995) (mem.op.), the court found that decertification was appropriate because the plaintiff's theory, that an attorney who acted as a closing agent for the plaintiff's loan was the mortgage company's

---

**3.** In this regard, Plaintiffs' proposed class A is overbroad because it includes *all* persons who purchased an automobile and a VSC pursuant to a retail installment contract without regard to whether the VSC was purchased voluntarily or as a requirement imposed by Cars, Mercury, or

some other party. The only way to narrow the class would be to conduct a factual inquiry into the circumstances of each member's VSC purchase to determine whether the purchase was a condition imposed as part of the financing package.

closing agent, would have required individual inquiries in each case to determine whether the closing person was an agent of the mortgage company. *See id.* at *8; *see also O'Brien v. J.I. Kislak Mortgage Corp.*, 934 F.Supp. 1348, 1357–58 (S.D.Fla.1996). Similarly, in this case, whether a particular purchaser was required to purchase a VSC—the central issue in the claim—is an individual and fact-specific determination that must be made in each case.

■ The Court reaches a different conclusion with respect to Plaintiffs' itemization claim, which is reflected in Class C, because Plaintiffs do not need to show why they purchased a VSC to prevail on that claim. Plaintiffs allege that they purchased VSCs from Cars under retail installment contracts which stated that the entire amount for the VSC was paid to a third party when in fact part of the charge was retained by Cars and/or Mercury. Likewise, all of the members of proposed Class C purchased VSCs under retail installment contracts which disclosed that the fee was being paid to a third party but part of the fee was retained either by Cars or Mercury. The legal issue common to all such purchasers is whether the disclosures violated the TILA or the MCPA. Furthermore, courts in other cases involving precisely the same theory under the TILA have routinely certified classes. *See, e.g., Lopez v. Orlor, Inc.*, 176 F.R.D. 35, 38–40 (D.Conn.1997); *Cox v. Joe Rizza Ford, Inc.*, No. 94C5688, 1996 WL 65994, at *8–11 (N.D.Ill. Feb. 9, 1996) (mem.op.).

■ Plaintiffs' MCPA claim cannot be certified because the MCPA limits damages in class actions to "actual damages." See M.C.L.A. § 445.911(3). While it is true that the determination of actual damages under the MCPA will require an individual analysis of each class member's credit circumstances, the claim may still be certified for purposes of the declaratory relief which Plaintiffs seek. *See Van Vels v. Premier Athletic Ctr. of Plainfield, Inc.*, 182 F.R.D. 500, 509 (W.D.Mich.1998). Therefore, Plaintiffs' MCPA claims may be certified for declaratory relief only.

### 3. Typicality

■ The third prerequisite to class certification is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3).

Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.

*American Med.Sys.*, 75 F.3d at 1082 (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3–13, at 3–76 (3d ed.1992) (omitting footnote)). If proof of the representatives' claims would not necessarily prove all the proposed class members' claims, the representatives' claims are not typical of the proposed members' claims. *See R.W. Brooks v. Southern Bell Tel. & Tel. Co.*, 133 F.R.D. 54, 58 (S.D.Fla.1990) (mem.op.).

■ As noted above, proof of Plaintiffs' "finance charge" claim would not prove the claims of the members of Class A because the issue of whether Cars required a VSC as a condition of financing would necessitate an individualized determination based upon the unique circumstances of each class member. The typicality problem is demonstrated by the claims pled by Plaintiffs. Peters alleges that Cars and Mercury did not require a VSC in the financing package originally presented, but that a VSC was a condition of the second financing package, which was payable over a longer term and provided lower payments. By contrast, Piechowski alleges that the VSC was included in the retail installment contract without any prior discussion about whether Piechowski wished or agreed to purchase the VSC. Given the significant factual differences in the two claims, proof of

Peters' claim would not also prove Piechowski's claim and vice versa.

■ Plaintiffs' itemization claim requires a different conclusion. Proof of that claim, as alleged, would prove the claims of the members of Class C. *See Lopez,* 176 F.R.D. at 39. Therefore, the Rule 23(a)(3) requirement is satisfied.

### 4. Adequacy

■ The fourth prerequisite to class certification is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The adequacy requirement is met where the representatives: (1) have common interests with the unnamed class members; and (2) will vigorously prosecute the class action through qualified counsel. *Senter v. General Motors Corp.,* 532 F.2d 511, 525 (6th Cir. 1976).

■ Cars contends that Plaintiffs are not proper representatives because they have claims which are antagonistic to the claims of other class members, namely, their breach of contract and fraud claims. However, the fact that Plaintiffs may have claims for damages not held by members of the class does not automatically mean that their interests are antagonistic to the putative class members' interests. *See Stewart v. Winter,* 669 F.2d 328, 335 (5th Cir.1982) (noting that "the courts have often viewed the assertion of [a separate claim by the class representative] as an indication that the representative will prosecute the action vigorously"); *Roe v. Operation Rescue,* 123 F.R.D. 500, 504 (E.D.Pa. 1988) (mem.op.) (finding that named representatives' claims for damages did not show conflict that precluded representation). Cars has not shown that Plaintiffs' individual fraud and breach of contract claims will have an actual adverse impact upon Plaintiffs' representation of the class, and the Court need not "engage in hypothetical analysis about possible future conflicts within the class." *In re Telectronics Pacing Sys., Inc., Accufix Atrial "J" Leads Prods. Liab. Litig.,* 164 F.R.D. 222, 229 n. 5 (S.D.Ohio 1995). Moreover, Plaintiffs' request for actual damages under the TILA in addition to their *pro rata* share of the class recovery does not produce a conflict, at least where Plaintiffs are not also seeking individual damages under 15 U.S.C. § 1640(a)(2)(A). *See Lopez,* 176 F.R.D. at 39–40.

### C. Rule 23(b) Requirements

■ In addition to meeting the requirements of Fed.R.Civ.P. 23(a), a party seeking certification must show that the proposed class satisfies at least one of the Rule 23(b) categories. Plaintiffs seek certification under Rule 23(b)(2) and 23(b)(3). Certification under Rule 23(b)(2) is generally inappropriate when the primary relief sought is damages. *See Boughton v. Cotter Corp.,* 65 F.3d 823, 827 (10th Cir.1995); *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,* 149 F.R.D. 65, 79 n. 26 (D.N.J.1993). While Plaintiffs do seek declaratory relief in addition to damages, the requested declaratory relief is only incidental to damages, the primary relief sought in this case. Thus, the putative classes cannot be certified under Rule 23(b)(2).

■ Under Rule 23(b)(3), a plaintiff must demonstrate that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### 1. Predominance

For the reasons discussed above in the Court's discussion on commonality and typicality, certification of Class A, which pertains to Plaintiffs' finance charge claim, would be inappropriate because the central issue to the claim—whether the specific plaintiff elected to purchase a VSC or was required by Cars to purchase a VSC—is a determination that must be made on a case-by-case basis. On the other hand, common issues applicable to Class C in Plaintiffs' itemization claim predominate over individual issues because the individual issues will be determined by the members' inclusion in those classes. The primary legal issue applicable to Class C is whether Cars' itemization practices, which

were applied in the same manner to all class members, violated the TILA or the MCPA.

## 2. Superiority

Rule 23(b)(3) lists four factors which a court should consider in determining whether a class action is superior to other methods for handling the controversy. The factors are:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3)(A)–(D).

The Court finds that each of these factors weighs in favor of certifying proposed Class C with respect to Plaintiffs' itemization claim. Given the relatively small amount of each claim, it is unlikely that the individual class members would file their own suits or have any significant interest in controlling their own cases. In addition, because most members of the proposed class are likely unaware of their rights under the TILA and MCPA, the class members will probably not file suit to protect their rights. Certification of the class will not interfere with other litigation since there apparently is no other suit pending. Judicial economy will be promoted through one action rather than through a large number of claims which present the same issue. Finally, nothing in the record indicates that the proposed class would be burdensome to manage.

## D. The Class and Notification

The Court will certify the class described in Class C above with respect to the TILA itemization claim in Count I against Cars and the MCPA itemization claim in Count II against Cars. The class will be certified with respect to all issues under the TILA claim but will be certified only on the issue of liability on the MCPA claim. The claims within the class will be limited to claims arising within one year of the filing of the original complaint under the TILA and claims arising within six years of the filing of the original complaint under the MCPA.

Notice must be sent to all class members advising them of their rights, including the right to opt out of the suit. Plaintiffs' counsel shall file a proposed notification form within fourteen (14) days, together with a statement describing the method by which the notice will be provided to class members and a list of persons to whom the notice will be sent. Cars will have fourteen (14) days from the date of the filing to submit any objections or comments.

## Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Plaintiffs' motion for class certification. The Court will certify Class C with respect to Plaintiffs' itemization claim against Cars under the TILA in Count I, as to both liability and statutory damages, and the MCPA itemization claim against Cars in Count II only on the issue of liability. In addition, the Court will dismiss Plaintiffs' TILA claim against Mercury with prejudice and dismiss Plaintiffs' state law claims against Mercury without prejudice pursuant to 28 U.S.C. § 1367(c).