Sylvester **RUGUMBWA**, Plaintiff,

v.

**BETTEN MOTOR SALES**, Defendant.

No. 1:00–CV–363.

United States District Court, W.D. Michigan, Southern Division.

March 29, 2001.

Phillip C. Rogers, Grand Rapids, MI, for plaintiff.

Michael D. Wade, Garan, Lucow, Miller & Seward, PC, Grand Rapids, MI, for defendant.

## OPINION

BRENNEMAN, United States Magistrate Judge.

Plaintiff, Sylvester Rugambwa, claims that defendant Betten Motor Sales ("Betten") violated provisions of the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.,* and various state statutes with respect to his July 10, 1999, purchase of a 1991 Toyota Camry. This matter is before the court on plaintiff's motion for class certification (docket no. 8).

## I. Background

Plaintiff alleges in his second amended class action complaint that as part of his vehicle purchase, Betten charged plaintiff $1,495.00 for a vehicle service contract, also known as an "extended warranty." The retail installment contract for the vehicle listed the extended warranty in the category of "Itemization of Amount Financed" and subcategory of "Insurance Premiums Paid to Others on my Behalf," making the representation that the $1,495.00 charge would be paid to a third party to procure coverage. Contrary to the representation set forth in the installment contract, Betten did not pay the full $1,495.00 to a third party; rather Betten paid the warranty company $751.00 for the extended warranty and retained $744.00 as a "secret profit" or "upcharge." Betten did not disclose this upcharge to plaintiff. Plaintiff alleges that Betten's misrepresentation of the extended warranty purchase price violated the disclosure requirement of TILA, § 1638(a)(21)(B)(iii) and Regulation Z, 12 C.F.R. §§ 226.17(a)(1) and 226.18(c). Plaintiff seeks statutory and actual damages for this violation.

In addition, plaintiff has invoked this court's supplemental jurisdiction under 28 U.S.C. § 1367 for several state law claims, which include: violations of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.;* violations of the Michigan Motor Vehicle Installment Sales Contract Act, Mich. Comp. Laws § 566 .302; violations of the Michigan Motor Vehicle Sales Finance Act, Mich. Comp. Laws § 492.101 *et seq.;* a count for "replevin" seeking a refund or credit to principal of finance charges received by defendant under the installment contract or a refund of the illegal "upcharges" collected by defendant; a count for unjust enrichment; and, violations of the Michigan Credit Reform Act, Mich. Comp. Laws § 445.1851 *et seq.*

## II. Class Certification under FED. R. CIV. P. 23

Plaintiff seeks to certify a class action pursuant to FED. R. CIV. P. 23, which provides that one or more members of a class may sue as representative parties on behalf of all members of a class. FED. R. CIV. P. 23(a) lists the four prerequisites which must be met to maintain a class action:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all parties is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

These four requirements are referred to as "numerosity, commonality, typicality and adequacy of representation." *Peters v. Cars To Go, Inc.*, 184 F.R.D. 270, 275 (W.D.Mich. 1998). "A court may certify a class action only if all four requirements are met." *Lozada v. Dale Baker Oldsmobile, Inc.*, 197 F.R.D. 321, 327 (W.D.Mich.2000), citing *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996).

If each of the four requirements of Rule 23(a) is met, the party seeking certification must also show that the action falls within one of the categories listed in Rule 23(b). Here, plaintiff attempts to show that the action falls within FED. R. CIV. P. 23(b)(2) and 23(b)(3). Rule 23(b)(2) provides that a class action may be maintained if

the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]

Rule 23(b)(3) provides that a class action may be maintained if

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

While a district court has broad discretion in deciding whether to certify a class, it may not certify the class without performing a rigorous analysis of the Rule 23 requirements. *See Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998) (en banc); *Lozada*, 197 F.R.D. at 327. The party seeking class certification bears the burden of proof. *Peters*, 184 F.R.D. at 275. It has been stated that "[i]n determining whether to certify a class action, the district court must accept as true the allegations of plaintiffs' complaint and resolve doubts in favor of plaintiffs." *Lozada*, 197 F.R.D. at 327. However, "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *General Tel. Co. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

Maintainability may be determined by the court on the basis of the pleadings, if sufficient facts are set forth, but ordinarily the determination should be predicated on more information than the pleadings will provide .... The parties should be afforded an opportunity to present evidence on the maintainability of the class action.

*American Medical Systems, Inc.*, 75 F.3d at 1079, quoting *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir.1974).

Here, plaintiffs propose that the following class be certified:

(a) All persons who executed a retail installment sales contract for the purchase of a motor vehicle from Betten Motor Sales, Inc.; (b) in a transaction that included the purchase of a vehicle service con-

tract; (c) where the retail installment sales contract stated that the full purchase price of the vehicle service contract would be paid to others on the purchaser's behalf; (d) and where the retail installment sales contract failed to disclose that a portion of the purchase price of the vehicle service contract would be retained by Betten Motor Sales; and (e) where a portion of the purchase price of the vehicle service contract was in fact retained by Betten Motor Sales, Inc.

Second amended complaint at ¶ 12.

Plaintiff proposes that the class period in connection with the federal TILA claim be limited to those who meet the class definition and whose retail installment contracts were executed during the one-year period immediately preceding the filing of plaintiff's complaint, i.e., between May 19, 1999 and May 19, 2000. Pltff.'s Motion for class cert. Plaintiff also proposes that the class period in connection with the state-law counts be limited to those whose retail installment contracts were executed during the six-year period immediately preceding the date of filing of plaintiffs' complaint on May 19, 2000.[1]

### A. Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires that before certifying a class, the court must determine that the "class is so numerous that joinder of all members is impracticable ..." Betten does not contest the numerosity requirement, noting that the potential class would exceed one hundred members. Def.'s Brief in opposition at 4 (docket no. 23). "While there is no set rule for determining whether the numerosity requirement is satisfied, a class numbering more than 40 members usually satisfies the impracticability requirement, and classes containing 100 or more members routinely satisfy the numerosity the requirement [citations omitted]." *Peters,* 184 F.R.D. at 276. *See also Consolidated Rail Corp. v. Town of Hyde* Park, 47 F.3d 473, 483 (2d Cir.1995) ("numerosity is presumed at a level of 40 members"). Accordingly, the court finds that plaintiff has demonstrated numerosity.

### B. Rule 23(a)(2): Commonality

■ Rule 23(a)(2) requires that "there are questions of law or fact common to the class."

The commonality requirement is met if there is one question of law or fact. *See Bittinger v. Tecumseh Products Co.,* 123 F.3d 877, 884 (6th Cir.1997). The commonality test does not mandate that all questions raised in the litigation need be common so long as at least one issue is common to all class members. *American Medical Sys.,* 75 F.3d at 1080. "When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected." *Rodriguez v. Berrybrook Farms, Inc.,* 672 F.Supp. 1009, 1015 (W.D.Mich.1987).

*Lozada,* 197 F.R.D. at 329.

The court rejects defendant's contention that there is a lack of commonality because plaintiff's claim is barred by an arbitration agreement. For the reasons set forth in its order denying defendant's motion to compel arbitration (docket no. 49), the court finds that the arbitration agreement does not act as a bar to these proceedings. In addition, the court will address defendant's contentions regarding plaintiff's English speaking ability, and his failure to review the extended warranty documents, in subsequent sections of this opinion regarding typicality and adequacy of representation.

The standard for commonality is not demanding, requiring only a single common issue of law or fact. Here, a significant common issue exists with respect to whether defendant's failure to disclose the upcharge and the actual cost of the extended warranty violated TILA. "[C]ourts in other cases involving precisely the same theory under TILA have routinely certified classes." *Peters,* 184 F.R.D. at 278, citing *Lopez v. Orlor, Inc.,* 176 F.R.D. 35, 38–40 (D.Conn.1997) and *Cox v. Joe Rizza Ford, Inc.,* No. 94–C–5688,

---

1. These periods are established to conform with the limitations periods of the respective federal and state laws.

1996 WL 65994 at \* 8–11 (N.D.Ill. Feb.9, 1996).[2] Clearly, the resolution of this issue advances the litigation. *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc). Accordingly, the court finds that plaintiff has established sufficient commonality for purposes of Rule 23(a).

### C. Rule 23(a)(3): Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the unchallenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.

*American Medical Sys.*, 75 F.3d 1069 at 1082 (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* § 3.13, at 3–76 (3d ed.1992)(omitting footnote)).

> A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his claims, the named plaintiff will also advance the interests of the class members.

*Id.* at 1082.

Defendant contends that plaintiff's claim lacks typicality because he did not speak English and was unaware that he purchased the extended warranty. In order to resolve the typicality requirement, the court must first review the nature of the alleged TILA violation, and then review plaintiff's claim within the framework of the violation.

**2.** Although the court does not follow *Peters,* 184 F.R.D. 270, in all regards, as discussed more

### 1. The TILA violation

A dealer's failure to disclose its "upcharge" for a service agreement or warranty purportedly paid to a third-party constitutes a violation of the itemization requirements of § 1638(a)(2)(B)(iii). *See Gibson v. Bob Watson Chevrolet–Geo,* 112 F.3d 283, 285 (7th Cir.1997). Section 1638(a)(2)(B)(iii) provides in pertinent part:

> **(a) Required disclosures by creditor.** For each consumer credit transaction other than under an open end credit plan, the creditor shall disclose each of the following items, to the extent applicable: . . . .

> (2)(B) In conjunction with the disclosure of the amount financed, a creditor shall provide a statement of the consumer's right to obtain, upon a written request, a written itemization of the amount financed. The statement shall include spaces for a "yes" and "no" indication to be initialed by the consumer to indicate whether the consumer wants a written itemization of the amount financed. Upon receiving an affirmative indication, the creditor shall provide, at the time other disclosures are required to be furnished, a written itemization of the amount financed. For the purposes of this subparagraph, "itemization of the amount financed" means a disclosure of the following items, to the extent applicable . . .

>> (iii) each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person.

■ While plaintiff seeks statutory and actual damages for the TILA violation, the court notes that only actual damages are available for this particular violation. Civil liability for violations of TILA is set forth in § 1640, which provides for: actual damages, § 1640(a)(1); statutory damages, § 1640(a)(2); and costs and a reasonable attorney's fee, § 1640(a)(3). The remedy for failing to make a § 1638(a)(2)(B)(iii) disclosure is set forth in 15 U.S.C. § 1640(a), which provides in pertinent part:

fully *infra,* its position on commonality seems well taken.

In connection with the disclosure referred to in section 1638 of this title, a creditor shall have a liability determined under paragraph (2) [i.e., statutory damages under § 1640(a)(2) ] only for failing to comply with the requirements of section 1635 of this title or of paragraph (2) (insofar as it requires a disclosure of the 'amount financed'), (3), (4), (5), (6), or (9) of section 1638(a) of this title [i.e., 15 U.S.C. § 1638(a) ]. [Emphasis added.]

In reading § 1638(a)(2)(B)(iii) together with § 1640(a), it is clear that statutory damages are limited to violations that require the disclosure of the "amount financed." Statutory damages are not available under § 1638 for failure to disclose the itemization of the amount financed. Here, the inaccurate disclosure complained of is not the amount financed, but an itemization of amounts to be paid to a third person by the creditor. In reaching this conclusion, the court adopts the reasoning set forth in *Grant–Davis v. Toyota on Western, Inc.,* No. 95–C–0043, 1995 WL 124128 (N.D.Ill. March 21, 1995). In *Grant–Davis,* the court was faced with the same claim asserted here, i.e., the defendant dealership represented that the full amount of an extended warranty was paid to a third-party, when the dealership actually paid a portion of that amount to the third-party and retained the balance as additional profit on the sale in violation of § 1638(a)(2)(B)(iii). Under these facts, the court found that the plaintiff was not entitled to statutory damages under § 1640(a)(2):

> The alleged violation of § 1638(a)(2) is not a failure to disclose "the amount financed," but a failure to accurately itemize the components of the amount financed. There is also no contention that any other subsections of 1638(a) have been violated. Therefore, plaintiff does not make a claim upon which statutory damages other than actual damages pursuant to § 1640(a)(1) may be awarded.

*Grant–Davis,* 1995 WL 124128 at * 4; *accord. Kent v. Celozzi-Ettleson Chevrolet, Inc.,* No. 99–C–2868, 1999 WL 1021044 (N.D.Ill. Nov.3, 1999) ("statutory damages under § 1640(a)(2) may be recovered only as to certain types of TILA violations, and

§ 1638(a)(2)(B)(iii) is not one of them"); *Groth v. Rohr–Ville Motors, Inc.,* No. 95–C–05429, 1997 WL 630189 (N.D.Ill. Sept.30, 1997).

Under these circumstances, the court concludes that plaintiff and the proposed class are not entitled to statutory damages under § 1640(a)(2), but are limited to their actual damages sustained as a result of Betten's failure to disclose the "upcharge" for the extended warranty under 1640(a)(1). Proof of actual damage presents a considerable hurdle for a plaintiff in a TILA action, because the plaintiff must demonstrate detrimental reliance in order to be entitled to damages. *See Turner v. Beneficial Corp.,* 242 F.3d 1023 (11th Cir.2001); *Peters v. Jim Lupient Oldsmobile Co.,* 220 F.3d 915, 916–17 (8th Cir.2000).

### 2. Plaintiff did not rely on the disclosure

■ In order to establish actual damages for a creditor's failure to make a disclosure of an upcharge under § 1638(a)(2)(B)(iii), plaintiff must demonstrate that (1) he read the TILA disclosure statement; (2) he understood the charges being disclosed; (3) had the disclosure been accurate, he would have sought a lower price; and, (4) he would have obtained a lower price. *Peters,* 220 F.3d at 916–17.

■ During his deposition, plaintiff testified that he did not understand what an extended warranty was at the time he purchased the Toyota Camry, that he did not receive pamphlets regarding the extended warranty, and that he did not speak English at the time. Rugambwa Dep. at 6, 24–25, 31, 33, 37, 46 and 54–55. Plaintiff further testified that no one read him the forms and that his sister, who accompanied him at the dealership, did not act as his translator. Id. at 33, 41. It is unfortunate that plaintiff purchased the Toyota Camry without understanding the details of the transaction, but the problems caused by the language barrier presumably set him apart from the others in the proposed class. *See, Stout v. J.D. Byrider,* 228 F.3d 709 (6th Cir.2000). However, plaintiff's lack of understanding prevents him from proving actual damages, because he

cannot demonstrate that his reliance on the inaccurate disclosure resulted in actual damages. *See Peters*, 220 F.3d at 916–17. Specifically, plaintiff cannot demonstrate that he either read the TILA disclosure statement or that he understood the charges being disclosed. *Id.* Because plaintiff cannot prove actual damages under TILA, his claims are not typical of the putative class. *See Peters*, 184 F.R.D. at 278 ("[i]f proof of the representatives' claims would not necessarily prove all the proposed class members' claims, the representatives' claims are not typical of the proposed members' claims"). Accordingly, the court finds that plaintiff has failed to demonstrate typicality.

### D. Rule 23(a)(4): Adequacy of Representation

■ Finally, Rule 23(a)(4) provides that the court may certify a class only if "the representative parties will fairly and adequately protect the interests of the class."

The Sixth Circuit has identified two criteria for determining the adequacy of representation. First, the representative must have common interests with the unnamed members of the class. Second, it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel. *See American Medical Sys.*, 75 F.3d at 1083 (quoting *Senter [v. General Motors Corp.]*, 532 F.2d [511] at 525 [(6th Cir.1976)] (quotations omitted)). The adequacy-of- representation requirement requires the court to determine "the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Cross [v. National Trust Life Insurance Company]*, 553 F.2d [1026] at 1031 [6th Cir.1977]. "The adequacy of representation requirement overlaps with the typicality requirement because in the absence of typical

claims, the class representative has no incentives to pursue the claims of the other class members." *American Medical Sys.*, 75 F.3d at 1083.

In demonstrating adequacy of representation, plaintiffs have the initial burden to show facts sufficient to support a finding that they will fairly and adequately protect the interests of the class. 2 NEWBERG § 7.24 at 7–80, 7–81. In most instances, adequacy is presumed in the absence of contrary evidence by the party opposing class certification. *Id.* at 7–81. Doubts about adequate representation should be resolved in favor of upholding the class, subject to later possible reclassification or the creation of subclasses. *Id.* at 7–82 (citing cases).

*Lozada*, 197 F.R.D. at 330.

■ Defendant does not contest the adequacy of class counsel. Def.'s Brief at 13. Plaintiffs' counsel is an experienced class action attorney with considerable knowledge of consumer rights litigation. *See,* Declaration of Counsel, Exhibit 4, Motion for class cert. Accordingly, the court finds that counsel is adequate to serve the interests of the class. However, resolving all doubts about adequate representation in favor of plaintiff, the court nevertheless finds that plaintiff is not an adequate representative. As noted above, plaintiff's claim is not typical, because by his own admission he did not understand the charges being disclosed. Plaintiff cannot demonstrate the detrimental reliance necessary to prove actual damages. Nor does it appear that he either sought to understand what an extended warranty was at the time of the purchase or even by the time of his deposition. This unusual factual situation makes it unlikely plaintiff will be able to vigorously prosecute the interests of the class. Accordingly, the court finds that plaintiff is not an adequate representative for the class.[3]

---

3. It is unnecessary for the court to address defendant's contentions that plaintiff is an inadequate representative because he cannot speak English fluently and is not an American citizen. Nevertheless, the court notes that neither contention appears to have merit. First, fluency in English is not a requirement for an adequate class representative. *See Arango v. GC Services, LP*, No. 97–

C–7912, 1998 WL 325257 at * 3 (N.D.Ill. June 11, 1998). This is a separate question from whether plaintiff's lack of familiarity with the English language led to an underlying factual situation that was not typical of other proposed class members.

## III. Rule 23(b)

Plaintiff has failed to meet the typicality and adequacy of representation requirements of Rule 23(a). However, even if plaintiff satisfied the requirements of Rule 23(a), class certification would be inappropriate under either Rule 23(b)(2) or (3). Consequently, the court finds it appropriate to briefly discuss Rules 23(b)(2) and (3) as it applies to the TILA claims at issue in this suit.

### A. Rule 23(b)(2): Declaratory and Injunctive Relief

The court rejects plaintiff's contention that he is entitled to class certification under Rule 23(b)(2), when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The Advisory Committee Notes state in pertinent part that Rule 23(b)(2):

is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate... **The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages....**

Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration... Subdivision (b)(2) is not limited to civil-rights cases. Thus, an action looking to specific or declaratory relief could be brought by a numerous class of purchasers, say retailers of a given description, against a seller alleged to have undertaken to sell to that class at prices higher than those set for other purchasers, say retailers of another description, when the applicable law forbids such a pricing differential. So also a patentee of a machine, charged with selling or licensing the machine on condition that purchasers or licensees also purchase or obtain licenses to use an ancillary unpatented machine, could be sued on a class basis by a numerous group of purchasers or licensees, or by a numerous group of competing sellers or licensors of the unpatented machine to test the legality of the "tying" condition. [Emphasis added.]

*See, e.g., Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 411 (5th Cir.1998), which quoted the Advisory Committee Notes for the proposition that "certification under Rule 23(b)(2) 'does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages.'"

■ While plaintiff requests declarations from the court that Betten violated various statutes, and seeks injunctive relief in relation to some violations, the primary relief sought in his second amended complaint is money damages. This is not a case in which injunctive relief is the primary relief sought to protect a large, unnamed number of class members from a defendant's unlawful actions. In resolving this issue, the court adopts the reasoning expressed in *Peters,* 184 F.R.D. 270, which involved similar claims that a car dealer failed to disclose the price of a vehicle service contract as a finance charge under TILA, failed to disclose the retention of a portion of the vehicle service contract price under TILA, violated of the Michigan Consumer Protection Act, and also breached contracts and committed fraud. In *Peters,* the court rejected certification under Rule 23(b)(2) on the ground that the primary relief sought was money damages:

Certification under Rule 23(b)(2) is generally inappropriate when the primary relief sought is damages. *See Boughton v. Cotter Corp.,* 65 F.3d 823, 827 (10th Cir.1995); *Liberty Lincoln Mercury, Inc. v. Ford*

---

Second, it does not appear to the court that plaintiff is automatically barred from acting as a class representative because he is not a U.S. citizen. One court prevented a class representative subject to deportation for her activities as a prostitute from acting as the representative because she was under a serious disability and had unique defenses inapplicable to the other class members. *See Hagen v. City of Winnemucca,* 108 F.R.D. 61, 65–66 (D.Nev.1985) However, there is no evidence that plaintiff in the present case is currently subject to deportation.

*Mktg. Corp.,* 149 F.R.D. 65, 79 n. 26 (D.N.J.1993). While Plaintiffs do seek declaratory relief in addition to damages, the requested declaratory relief is only incidental to damages, the primary relief sought in this case. Thus, the putative classes cannot be certified under Rule 23(b)(2).

*Peters,* 184 F.R.D. at 279.

Accordingly, the court finds that plaintiff has failed to meet the requirements for class certification under Rule 23(b)(2).

## B. Rule 23(b)(3): Predominance and Superiority

Under Rule 23(b)(3), a court can certify a class action if:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Even if the commonality requirement of Rule 23(a)(2) is satisfied by a common shared experience, "the predominance criterion is far more demanding." *Id.* at 624–25, 117 S.Ct. 2231.

As previously discussed, each class member must demonstrate detrimental reliance in order to be entitled to damages in the TILA action. The necessity of demonstrating detrimental reliance is a sufficient basis to deny class certification in a TILA action. *See Perrone v. General Motors Acceptance Corp.,* 232 F.3d 433, 440 (5th Cir. 2000), *petition for cert. filed* (U.S. Jan. 31, 2001) (No. 00–1251). *See also Stout,* 228 F.3d at 718 (plaintiff failed to meet the requirement of Rule 23(b) that common issues

predominate over individual issues, when case involved fraud and TILA claims which required an individual assessment of each customer's transaction); *Krieger v. Gast,* 197 F.R.D. 310, 320 (W.D.Mich.2000) (court refused to certify class under Rule 23(b)(3) because state-law fraud claim required proof of individualized reliance by class members).

Assuming that the putative class consists of over 100 members, as Betten suggests, then the determination of each party's actual damages on a case-by-case basis would defeat the purpose of certifying a class action. "Where numerous mini-trials are necessary to resolve individual questions of reliance and causation, the benefits of a class action disappear." *Yadlosky v. Grant Thornton L.L.P.,* 197 F.R.D. 292, 297 (E.D.Mich.2000). As the court observed in *O'Neil v. Appel,* 165 F.R.D. 479, 498 (W.D.Mich.1996), "district courts have refused to certify class actions for the very reason that individual proof of reliance would be necessary, thus creating an unmanageable lawsuit in which numerous 'mini-trials' on the issue of reliance and damages would overwhelm the common issues." [4]

Similarly, plaintiff fails to meet the Rule 23(b)(3) requirement that a class action "is superior to other available methods for the fair and efficient adjudication of the controversy."

In determining whether certification of class action is superior to other available methods, Rule 23(b)(3) lists a variety of factors to be considered by the court: (1) the interest of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation already commenced by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) any management difficulties likely to be encountered if a class action is certified. *See* FED. R. CIV. P. 23(b)(3). These factors are not exhaustive, and the court may consider such other factors as

---

**4.** The court is mindful that its decision deviates from another case in this district, *Peters v. Cars to Go, Inc.,* 184 F.R.D. 270 (1998), in which the court found that a similar "failure to itemize" claim under TILA presented a common legal issue for purposes of class certification under Rule 23. However, in that instance the court decided *Peters* without the benefit of the recent decisions in *Turner,* 242 F.3d 1023, *Perrone,* 232 F.3d 433, *Stout,* 228 F.3d 709 and *Peters,* 220 F.3d 915.

may be relevant to the litigation. *See* 1 NEWBERG § 4.28 at 4–113; *Boggs v. Alto Trailer Sales, Inc.,* 511 F.2d 114 (5th Cir.1975). The factors, however, are directed to the notions of judicial integrity, convenience and economy. *See Hurwitz v. R.B. Jones Corp.,* 76 F.R.D. 149 (W.D.Mo. 1977).

*Lozada,* 197 F.R.D. at 332.

As previously discussed, the need for "mini-trials" on the issue of individual reliance presents a substantial challenge in conducting the proposed class litigation. The court views this challenge as one of the "management difficulties" referred to in Rule 23(b)(3). "Commonly referred to as 'manageability,' this consideration encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 164, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). For the same reasons that the court discussed in finding that individual issues of reliance and causation would predominate over the common issue, the court further finds that the class action form is not superior to other methods of adjudicating this controversy.

Accordingly, the court finds that plaintiff has failed to meet the class certification requirements of Rule 23(b)(3).

### IV. Supplemental Jurisdiction

■ The statutory basis for this court's supplemental jurisdiction over state-law claims is set forth in 28 U.S.C. § 1367. Section 1367(c) provides that district courts may decline to exercise supplemental jurisdiction over related state claims if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

"[D]istrict courts have broad discretion in deciding whether to exercise supplemental jurisdiction." *Pinney Dock & Transp. Co. v. Penn Central Corp.,* 196 F.3d 617, 620 (6th Cir.1999). In exercising its discretion, a district court can consider such factors as judicial economy, convenience, fairness and comity. *Id.*

■ The district court's "wide latitude" in determining whether to retain jurisdiction over state claims extends to those cases in which state law "merely predominates" under § 1367(c)(2). *Dashields v. Robertson,* No. 99–1124, 2000 WL 564024 at *3 (May 10, 2000). Federal courts have not hesitated to dismiss or remand state causes of action under § 1367(c)(2) when the state claims would require elements of proof distinct from the federal claim, and cause a substantial expansion of the suit beyond that necessary and relevant to the federal claim. *See Green v. Zendrian,* 916 F.Supp. 493, 498 (D.Md. 1996). "[A] federal court with pendent jurisdiction should normally dismiss state claims without prejudice when it appears that the state issues 'substantially predominate' over the federal issues in terms of proof, scope, or comprehensiveness of the remedy sought." *Bodenner v. Graves,* 828 F.Supp. 516, 518 (W.D.Mich.1993). *See also James v. Sun Glass Hut of California, Inc.,* 799 F.Supp. 1083 (D.Colo.1992), (finding that plaintiff's six state law claims of breach of contract, promissory estoppel, fraud, negligent misrepresentation, bad faith and outrageous conduct predominated over her single federal claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*).

■ In this instance, the court declines to exercise its supplemental jurisdiction because plaintiff's six state law claims (based upon four state statutes) substantially predominate over their single federal claim. § 1367(c)(2). On one hand, plaintiff has a single federal claim pending under TILA. Little is left to do regarding this claim, since it appears that a violation of TILA has been shown, but monetary damages, either statutory or actual, cannot be. Moreover, for the reasons previously discussed, the TILA claim will not be proceeding as a class action.

On the other hand, the merits of all the state claims have yet to be resolved, and may

involve novel issues of law. See discussion, *infra.* Clearly, litigating six novel state claims would predominate over conducting a solitary federal claim. Moreover, if the court were to proceed to certify plaintiff's state law claims as a class, the class proceedings would certainly impact the "scope [ & ] comprehensiveness of the remedy sought." *Bodenner, supra.* Under these circumstances, the related state claims would unquestionably, in terms of numbers of claims, complexity of the issues, and the complexity of the proceedings, "substantially predominate[ ] over the claim ... which the district court has original jurisdiction."

The question of the novelty of the issues raised by the state law claims was addressed earlier this month in a nearly identical case. In *Rockey v. Courtesy Motors, Inc.,* 199 F.R.D. 578 (W.D.Mich.2001), a suit involving similar claims under the same four state statutes relied upon by plaintiff,[5] the court observed that "[a]lthough plaintiffs have asserted claims under a number of state statutes, there is not a single published state court opinion on point." *Rockey,* 199 F.R.D. at 596. In declining to exercise the supplemental jurisdiction of the court due to the novelty of the state law issues, § 1367(c)(1), the court pointed out that:

> There are no state or federal court decisions addressing the theories of liability asserted in plaintiffs' remaining state-law claims... Each of these [statutory] claims would require the court to apply a Michigan statute in an unprecedented fashion, with no guidance from any Michigan appellate court. Sales of extended warranties or motor vehicle service contracts are commonplace. Comity cautions that a federal court should not be the first court to step in and create new state-law liability. Economy, convenience and fairness also weigh against burdening this federal action with an excess overlay of state law.

*Id.* at 596. This reasoning only reinforces the court's belief in the present case that the state law issues now overwhelmingly pre-dominate over what is left of the TILA claim. Accordingly, plaintiff's six state law claims, identified in his second amended class action complaint as Counts II–VII, will be dismissed without prejudice. 28 U.S.C. § 1367(c)(1) and (2).

## V. Conclusion

Plaintiff has failed to demonstrate typicality and adequacy of representation under FED. R. CIV. P. 23(a). Even if plaintiff could meet the requirements under Rule 23(a), his claim would fail to meet the additional requirements for class certification under either Rule 23(b)(2) or (b)(3). Accordingly, plaintiff's motion for class certification (docket no. 8) will be denied. Furthermore, the court will decline to exercise supplemental jurisdiction over plaintiff's state law claims pursuant to § 1367, and these will be dismissed without prejudice. An order consistent with this opinion shall be issued forthwith.

## ORDER

In accordance with the Opinion filed this date:

IT IS HEREBY ORDERED that plaintiff Sylvester Rugambwa's motion for class certification (docket no. 8) is DENIED.

IT IS FURTHER ORDERED that plaintiff's state law claims, set forth in Counts II, III, IV, V, VI and VII of plaintiff's second amended class action complaint (docket no. 29) are DISMISSED without prejudice.

---

**5.** The four statutes involved in both cases are the Michigan Consumer Protection Act, Michigan Motor Vehicle Installment Sales Contract Act, Michigan Motor Vehicle Sales Contract Act, and Michigan Credit Reform Act.